UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARY MARTHA SNYDER,

    Plaintiff,

v.                                                Case No.:  6:22-cv-175-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## **OPINION AND ORDER**

Plaintiff Mary Martha Snyder seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. Plaintiff also filed a Supplemental Memorandum in Reply. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

#### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance on November 15, 2019, alleging disability beginning on February 21, 2019. (Tr. 85, 198-201). The applications were denied initially and on reconsideration. (Tr. 85, 100). Plaintiff requested a hearing, and on May 10, 2021, a hearing was held before Administrative Law Judge James Andres ("ALJ"). (Tr. 39-59). On June 11, 2021, the ALJ entered a decision finding Plaintiff not under a disability from February 21, 2019, through the date of the decision. (Tr. 17-33).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 30, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on January 28, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2019, the alleged onset date. (Tr. 19). The ALJ noted that Plaintiff worked part time and continued to work part time after the alleged onset date, but her earnings did not reach the level of substantial gainful activity. (Tr. 19-

20). At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical and lumbar degenerative disk disease, bilateral carpal tunnel syndrome, and obesity." (Tr. 20). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 22-24).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she could not climb ladders, ropes or scaffolds, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant could perform frequent bilateral overhead reaching above the shoulder.

(Tr. 24).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as an insurance clerk. (Tr. 32). The ALJ found this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 32-33). The ALJ concluded that Plaintiff had not been under a disability from February 21, 2019, through the date of the decision. (Tr. 33).

## II.     Analysis

On appeal, Plaintiff raises one issue. As stated by Plaintiff, it is whether the ALJ adequately considered the medical opinions in the record under the new regulations and whether the residual function capacity was supported by substantial evidence and an adequate rationale. (Doc. 18, p. 17). Plaintiff contends that the ALJ improperly considered the opinions of State Agency psychologists, Jeannie Nunez, Psy.D. and Janet Anguas-Keiter, Psy.D., medical expert Subramaniam I. Krishnamurthi, M.D., and treating physician assistant Amanda Folkers, PA. (Doc. 18, p. 18, 21).

### A.     Legal Standard

The same legal standard applies to all of these opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).[1] Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight,

---

[1] In Plaintiff's Memorandum and Supplemental Memorandum, Plaintiff cites cases construing the "treating physician rule," which was applicable prior to implementation of the new regulations, and not applicable here. (Doc. 18, p. 23-24; Doc. 21, p. 6). Plaintiff concedes that the "treating physician rule" "is superseded by the new [March 2017] regulations," but then argues that it does not mean that all prior case law using the old regulations is inapplicable. (Doc. 18, p. 23). Plaintiff's argument is foreclosed by *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022), which concluded that the Commissioner's promulgation of the new regulation, 20 C.F.R. § 404.1520c, abrogated the Eleventh Circuit's earlier precedent establishing and applying the treating-physician rule. *See also Cain v. Soc. Sec. Admin., Comm'r*, No. 22-10460, 2022 WL 17076735, at *2 (11th Cir. Nov. 18, 2022).

including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

**B.     Opinions of Dr. Nunez, Dr. Anguas-Keiter, and Dr. Krishnamurthi**

Plaintiff claims that the ALJ did not properly consider the opinions of State Agency psychologists, Dr. Nunez and Dr. Anguas-Keiter. (Doc. 18, p. 18-19). Both psychologists found Plaintiff had only mild limitations in, among other things, her ability to concentrate, persist, or maintain pace. (Tr. 91, 111).

At step two, the ALJ referred to both evaluations. (Tr. 20-21). The ALJ found the opinions of Dr. Nunez and Dr. Anguas-Keiter that Plaintiff had non-severe

mental impairments and only mild limitation in all areas to be consistent with and supported by Plaintiff's reliance on medication prescribed by her primary care physician for treatment of her depression, her lack of treatment with a mental health professional, her consistent work activity since her alleged onset date, her activities of daily living, and the record as a whole. (Tr. 20-21). The ALJ found these opinions persuasive. (Tr. 21).

Plaintiff argues that Dr. Nunez and Dr. Anguas-Keiter did not have the benefit of later records that contradict their opinions, such as records from PA Folkers's indicating Oxycodone was needed to treat Plaintiff's pain, but would interfere with her ability to drive an automobile, operate equipment, and affect mental alertness. (Doc. 18, p. 19 (citing Tr. 1200)). While PA Folkers did check a box indicating these side effects, she also included a handwritten note that Oxycodone, a controlled substance "can cause sedation + affect mental alertness." (Tr. 1200).

As the ALJ noted after considering all evidence of record, other evidence conflicted with PA Folkers's opinion as to any side effects of Plaintiff's medication. The ALJ noted that although Plaintiff alleged her ability to remember was affected by her impairments and medication, "her consistent work activity since her alleged onset date, as well as her undertaking the responsibility to training another employee to perform her job functions in her absence is consistent with no more than a mild limitation in the claimant's ability to understand, remember, and apply information.

The claimant's Back Center records[2] indicate she did not experience difficulty remembering or making decisions." (Tr. 21). The ALJ also found that Plaintiff stated that her medications did not cause side effects, she reported in January 2021 that she experienced no difficulty concentrating, remembering, or making decisions, and an April 2021 FCE (a physical therapist's functional capacity evaluation) included a statement that pain or other symptoms rarely became severe enough to interfere with attention and concentration as needed to perform work tasks (Tr. 25, 28, 30). Thus, the ALJ properly considered the supportability and consistency of the opinions of Dr. Nunez and Dr. Anguas-Keiter in finding them persuasive. Substantial evidence supports the ALJ's findings and the ALJ applied the correct legal standard.

Plaintiff also argues that the RFC includes no limitations on mental alertness. (Doc. 18, p. 19). Prior to step four, the ALJ must assess Plaintiff's RFC, the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the action. 20 C.F.R. §§ 404.1520(e). The ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not

---

[2] PA Folkers worked at the Back Center. (Tr. 31).

"severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)). Here, the ALJ considered all of Plaintiff's impairments, including any possible limitations from the side effects of Plaintiff's medications. Substantial evidence supports the ALJ's determination, in formulating the RFC.

Plaintiff next claims that the ALJ improperly relied on the opinion and testimony of medical expert Dr. Krishnamurthi, and improperly found his opinion persuasive. (Doc. 18, p. 19). At the May 2021 hearing, medical examiner Dr. Krishnamurthi testified that he reviewed the exhibits of record and found Plaintiff had degenerative joint disease of the lumbar and cervical spine, carpel tunnel syndrome, and a problem with the shoulder. (Tr. 41-42). He determined that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. (Tr. 42). He also found Plaintiff capable of performing work at a light level with occasional postural limitations, such as no climbing ladders, scaffolds, or ropes, and frequent reaching of the shoulder bilaterally. (Tr. 42-43). After summarizing Dr. Krishnamurthi's testimony, the ALJ found Dr. Krishnamurthi's opinion persuasive:

> When questioned as to the basis of his opinion, Dr. Krishnamurthi stated it was based on looking at the whole

> picture from all the medical evidence of record. Although he noted the consultative examination had revealed decreased lumbar range of motion, it [ ] also found full muscle strength and normal reflexes. Addressing the opinions contain[ed] in Dr. Vara's report of consultative examination related to no prolonged standing, walking, or sitting for more than one to two hours (Exhibit 14F) and within the assessment of physician's assistant Amanda Folkers (Exhibit 18F), Dr. Krishnamurthi stated the degree of limitation opined present within those documents [was] not supported by consideration of the totality of the medical evidence of record. Dr. Krishnamurthi also indicated the assessment of Ms. Folkers contained limitation[s] that would allow work within the sedentary exertional level. In questioning by the claimant's representative, Dr. Krishnamurthi stated he could not classify the claimant's low back surgery as "failed" despite the later removal of hardware. He indicated the hardware was removed upon the basis it was generating some pain. The undersigned notes Dr. Krishnamurthi is the only medical professional to have reviewed the totality of medical evidence of record submitted in support of the claimant's application for benefits. Although the claimant's history of multiple back surgeries involving both the cervical and lumbar regions is noted, as well as her history of bilateral carpal tunnel syndrome surgeries, the opinions of Dr. Krishnamurthi are consistent with the primarily normal findings made during the claimant's various physical examination[s], including her consultative physical examination and examinations through the Back Center showing normal 5/5 muscle strength, normal reflexes, negative straight leg raising tests, some limitation of lumbar range of motion, and tenderness of the spine. Despite the claimant's history of cervical surgery, at her November 2020 consultative physical examination [ ], no abnormality of the range of motion of her neck was found present. Accordingly, the opinions of Dr. Krishnamurthi have been persuasive in the undersigned's determination that the claimant is limited to a range of work within the light exertional level, as further defined within the above-assigned residual functional capacity.

(Tr. 29).

Plaintiff claims that the ALJ ignored the fact that non-examining medical sources are at a disadvantage, cannot review MRI scans or x-rays, and cannot examine a claimant and make their own clinical findings. (Doc. 18, p. 19-20). Under the new regulations, however, the Commissioner no longer defers or gives any specific evidentiary weight to a medical opinion, but rather all medical opinions are evaluated for supportability and consistency. 20 C.F.R. § 404.1520c(a). Plaintiff also claims that none of the opinions from examining medical sources support Dr. Krishnamurthi's opinion. (Doc. 18, p. 19-20).

The ALJ found Dr. Krishnamurthi's opinion supported by the evidence of record. (Tr. 29). He noted that Dr. Krishnamurthi was the only medical source who reviewed the totality of the medical evidence of record. (Tr. 29). The ALJ also addressed the disparity among the opinions of Dr. Krishnamurthi, consultative examiner Krishna Vara, M.D. and PA Folkers. (Tr. 29). The ALJ noted that Dr. Krishnamurthi found that the degree of limitations in these other opinions was not supported by the totality of the medical evidence of record. (Tr. 29). While the ALJ acknowledged that Plaintiff had a history of back and carpal tunnel surgeries, he found Dr. Krishnamurthi's opinion consistent with the "primarily normal" findings made during Plaintiff's various physical examinations, including her consultative physical examination and the examinations conducted through the Back Center. (Tr. 29).

Plaintiff also claims that Dr. Krishnamurthi missed or inaccurately described consultative examiner Dr. Vara's findings, and the ALJ did not properly identify any of these mistakes. (Doc. 18, p. 20). Plaintiff claims that consultative medical examiner Dr. Vara found Plaintiff had normal strength of 5/5, but Dr. Krishnamurthi mischaracterized this report as being able to walk or stand normally. (Doc. 18, p. 20). Plaintiff argues that these are not the same thing. (Doc. 18, p. 20). Dr. Krishnamurthi testified that he was looking at the whole picture, including Dr. Vara's consultative examination and PA Folkers's records. (Tr. 44-45). Although some of the hearing was inaudible, Dr. Krishnamurthi found Plaintiff able to "[w]alk or stand 5/5 and sensor examination of the flexors was normal." (Tr. 45). He then acknowledged that Dr. Vara determined that Plaintiff was limited to no prolonged standing, sitting, or walking for more than one to two hours. (Tr. 45). Dr. Krishnamurthi opined, however, that these limitations were not supported by the whole record. (Tr. 45). Thus, while Dr. Krishnamurthi may not have noted all of Dr. Vara's findings, he had reviewed the consultative examiner's opinion and found overall it was inconsistent with the medical evidence as a whole. He also reviewed PA Folkers records and found them not fully supported by the medical evidence of record. (Tr. 45). The ALJ considered the supportability and consistency of Dr. Krishnamurthi's evaluation and found his opinion persuasive. Substantial evidence supports the ALJ's findings and he applied the correct legal standard.

### C. PA Folkers Opinion

PA Folkers, an assistant to Syed Zaidi, M.D., completed a Physical Restrictions Evaluation for the period beginning February 21, 2019 through April 23, 2021. (Tr. 1198). Plaintiff argues that the ALJ failed to consider PA Folkers's clinical findings and explanations offered to support her opinion. (Doc. 18, p. 22).

The ALJ thoroughly summarized PA Folkers's evaluation:

> Within [the evaluation, PA Folkers] opined the claimant could sit 30 to 60 minutes without interruption, and could stand and/or walk for a maximum for 20 minutes without interruption. During an eight-hour day, it was opined the claimant could sit two to three hours, and stand/walk one to two hours, and would require three hours of resting. The claimant was also indicated to require breaks during her periods of sitting. However, she also indicated the claimant would be able to sit longer than the stated period if she was not required to perform repetitive reaching or perform head movement. A need to rest every two to three hours for 30 to 60 minutes was opined present, but such could include sitting without repetitive head/neck movements or repetitive reaching. The presence of "good days" and "bad days" was indicated, with the "bad days" potentially provoked by the amount of physical activity the claimant had to perform that day. It was opined the claimant would be off tasks 10% of the day while working. Although not indicated to be at that level at that time, it was considered likely the claimant could require two to three doctors' appointments per month. Lifting, both occasional and frequent, was limited to less than five pounds, with it being stated the claimant could not lift more than five pounds without pain. Crouching and crawling were prohibited. Climbing stairs, with handrails, was acceptable if not prolonged, with the same indicated for stooping. Kneeling was indicated to be limited, with the claimant requiring support/assistance. Reaching overhead, bilaterally, was limited to 10% of an eight-hour workday. Fine finger manipulation, pushing/pulling with the hands, hearing and speaking were not considered to be limited. Numbness of the right hand was indicated, with no specific

> limitation assigned to that symptom. Oxycodone, taken by the claimant, was noted to potentially cause sedation and affect mental alertness (Exhibit 18F). The opinions of physician[] assistant Folkers are found to be inconsistent with the objective medical findings made during her examination of the claimant, including 5/5 muscle strength throughout the lower extremities, normal lower extremities sensation, and negative straight leg raising tests.

(Tr. 31).

The ALJ then provided reasons to find PA Folkers's opinion unsupported by her treatment records and inconsistent with other evidence of record, including Plaintiff's own testimony:

> The opined need to rest for 30 to 60 minutes every two to three hours, is inconsistent with the claimant's testimony she has consistently work three five hours days per week since her alleged onset date, without any indication the claimant required rest beyond customary breaks during that period. Likewise, the limitation of the claimant to lifting/carrying less than five pounds is inconsistent with the claimant's own testimony that she could lift up to ten pounds. Regarding the need to rest for three hours following five hours of standing, walking, sitting, is also inconsistent with the claimant's testimony that upon arriving home [from] work she laid down for only one hour, before getting up to prepare dinner. Limitation of the claimant to less than a full range of sedentary work and less than an eight-hour workday, is also inconsistent with the opinions of both state agency medical consultant and that of medical expert Dr. Krishnamurthi. Accordingly, the opinions of physician[] assistant Folkers have been found unpersuasive.

(Tr. 31).

Plaintiff claims that the ALJ disregarded PA Folkers's clinical findings and explanations and failed to provide reasons why he found PA Folkers's opinion unpersuasive. (Doc. 18, p. 22). Plaintiff further claims the ALJ simply found PA

Folkers's opinion generally inconsistent with the objective medical findings, such as 5/5 muscle strength throughout the lower extremities, normal lower extremities sensation, and negative straight leg raise testing, and argues this is an insufficient rationale. (Doc. 18, p. 22). Plaintiff also contends that other records from the Back Center show lower extremity weakness, grossly decreased sensation to light touch in the left thigh, and positive straight leg testing, as well as other abnormal test results. (Doc. 18, p. 22-23; Doc. 21, p. 5).

While the ALJ found PA Folkers's opinion unsupported by and inconsistent with objective medical examination findings, the ALJ did not stop there. The ALJ further found that the need to rest every few hours was inconsistent with and unsupported by Plaintiff continuing to work part-time for five hours a day, three days per week, without any indication that Plaintiff needed to rest during her work schedule. (Tr. 31). The ALJ also found PA Folkers's opinion that Plaintiff was limited to lifting five pounds inconsistent with Plaintiff's own testimony that she could lift ten pounds. (Tr. 31). The ALJ further found that the need to rest for three hours following five hours of standing, walking, and sitting to be inconsistent with Plaintiff's part-time work schedule and her testimony that when she returned home from work, she rested only one hour and then began preparing dinner. (Tr. 31). Finally, the ALJ found PA Folkers's opinion that Plaintiff was limited to less than a full range of sedentary work and less than an eight-hour workday to be inconsistent

with the opinions of both state agency medical consultants and Dr. Krishnamurthi. (Tr. 31).

Lastly, Plaintiff contends that the ALJ failed to consider that PA Folkers's opinion was consistent with the Functional Capacity Evaluation of physical therapist Calvin James, who found Plaintiff could not lift/carry more than five pounds, and could sit for less than two hours total in an eight-hour day. (Doc. 18, p. 23). In the decision, the ALJ thoroughly summarized the findings in the FCE. (Tr. 30). As a whole, the ALJ found the FCE findings that Plaintiff retained the ability to perform work activity within the sedentary to light exertional level to be consistent with the opinions of Dr. Krishnamurthi and the State Agency medical consultants. (Tr. 30). He also found the FCE to be persuasive:

> to the extent the claimant is limited to work at no greater than the light exertional level. As to references within the FCE implying limitation of the claimant's ability to sustain eight[-]hour workdays, such has been found unpersuasive based upon the testing having been for a period of less than four hours, the claimant having consistently working five[-]hour workdays since her alleged onset date, and the opinions of Dr. Krishnamurthi, Dr. Baird, and Dr. Gerris indicating the claimant can sustain full workdays and workweeks.

(Tr. 30). While the ALJ did not specifically compare PA Folkers's opinion with that of the FCE, the ALJ made clear that he found the FCE persuasive only to the extent that it was consistent with the opinions of Dr. Krishnamurthi and the State Agency consultants.

Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). While Plaintiff argues that she is not asking the Court to reweigh the evidence, in essence, that is exactly what she is asking the Court to do. (Doc. 18, p. 18, 22; Doc. 21, p. 5). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision is supported by substantial evidence.

### III.  Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 10, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties